636 So.2d 144 (1994)
Sherwin James MILLER, Appellant,
v.
STATE of Florida, Appellee.
No. 92-3164.
District Court of Appeal of Florida, First District.
April 27, 1994.
*146 Leo A. Thomas, of Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A., Pensacola, for appellant.
Robert A. Butterworth, Atty. Gen., and Edward C. Hill, Jr., Asst. Atty. Gen., Tallahassee, for appellee.
*147 PER CURIAM.
Appellant, Sherwin James Miller, appeals an order placing him on probation following a jury verdict of guilt of the offenses of battery upon a law enforcement officer, reckless driving, and resisting arrest without violence. Appellant seeks review of the trial court's rulings with respect to (1) exclusion of testimony of a defense witness, (2) denial of judgment of acquittal as to the charge of battery of Officer James, (3) denial of judgment of acquittal as to the charge of reckless driving, (4) denial of judgment of acquittal as to the charge of resisting arrest, and (5) permitting the prosecutor to exercise peremptory challenges as to the only two African American members of the venire. We affirm in part and reverse in part.
The nature of the issues requires a somewhat detailed presentation of the pretrial proceedings, the jury selection process, and the trial proceedings. The first information filed in this cause charged appellant's companion, Wendy Baudin, with one count of battery upon a law enforcement officer, and charged appellant with two counts of battery upon a law enforcement officer and one count of reckless driving. Appellant and Ms. Baudin were represented by the same attorney. Before the case went to trial, Ms. Baudin pled nolo contendere to the lesser offense of resisting arrest without violence. At the plea proceeding, the attorney who represented both appellant and Ms. Baudin advised the trial court and the prosecutor that he intended to call Ms. Baudin as a defense witness at appellant's trial. The cause proceeded to trial on an amended information which charged appellant with the offenses of battery upon Officer James, battery upon Sergeant Griffin, reckless driving, and resisting arrest with violence.
During jury selection, the prosecutor challenged a female African American for cause, because the prospective juror stated in the initial voir dire that she would find it difficult to make a moral decision in a criminal trial. Under questioning by the trial judge, the prospective juror stated she is a very sympathetic person, who is prone to cry when a jury verdict is returned. The prospective juror then stated she thought she could be fair, and that she would not let sympathy enter into her decision. Upon conclusion of the colloquy, the prosecutor exercised a peremptory challenge to strike the prospective juror. Defense counsel objected on grounds that the prosecutor's peremptory challenge was based on racial discrimination. The parties stipulated that the defendant/appellant is a white male, and the challenged juror is an African American female. Noting that the prospective juror equivocated when asked whether she would let sympathy enter into the verdict, the trial judge permitted the state to exercise a challenge to excuse the prospective juror.
When the prosecutor challenged a second African American female, defense counsel again objected on racial grounds. In response to the court's inquiry, the prospective juror stated she had spent many sleepless nights worrying about her son in prison, but would do her best to decide the case fairly. When the trial court denied the prosecutor's challenge for cause, the state exercised a peremptory challenge. Defense counsel again raised an objection based upon racial discrimination grounds. A third African American venire person was excused on grounds of extreme hardship.
The charges in this case arose in the context of a vehicle stop for an alleged traffic violation. At 8:00 a.m. on April 14, 1992, appellant drove Ms. Baudin to her job on the campus of the University of West Florida. Sergeant Griffin, a university police officer, was monitoring in-bound traffic. He testified that he observed appellant's vehicle approach in the in-bound lane at a high rate of speed. When appellant's vehicle passed the patrol vehicle, Sergeant Griffin turned on his blue lights and gave chase. He pulled up beside appellant's vehicle and motioned to him to pull over, but appellant drove on after making what Sergeant Griffin interpreted as an obscene gesture. At that point, Sergeant Griffin sounded his siren.
Officer James, also a member of the university police force, was stationed one-half mile from Sergeant Griffin's original position. When he observed Sergeant Griffin's blue lights, Officer James joined the chase. Appellant pulled his vehicle onto the parking *148 pad at the building where Ms. Baudin works, whereupon Ms. Baudin left the car and entered the building. The two officers angled their patrol cars at the front and rear of appellant's vehicle. As the officers handcuffed appellant, Ms. Baudin observed the activity from a window of the building and ran back outside to ask what the officers were doing. While Officer James handcuffed appellant, Sergeant Griffin's verbal exchange with Ms. Baudin escalated into a physical confrontation. When Sergeant Griffin grappled with Ms. Baudin, appellant reacted. His effort to move toward Sergeant Griffin caught Officer James off balance, and ended with both the officer and appellant falling to the ground. Officer James testified that appellant did not strike him intentionally, and offered no initial resistance to the arrest. Appellant reacted only when Sergeant Griffin had his hands on Ms. Baudin. Officer James did not see appellant make any physical contact with Sergeant Griffin.
Sergeant Griffin testified that he monitors traffic in the morning hours when in-bound traffic is heavy, because there are walkers, bikers, and runners in the area at that time. When the sergeant first observed appellant, he appeared to be traveling fifty to fifty-five miles per hour, then slowed to approximately forty miles per hour after he passed a traffic light. Although appellant seemed to have his vehicle under control, the sergeant concluded he should not have been driving so fast in view of the vehicle and pedestrian traffic around him.
When the defense called Ms. Baudin as a witness, the prosecutor objected that he had not been furnished written notice. Defense counsel asserted the state could not claim surprise, because Ms. Baudin was a co-defendant. Counsel said he did not consider it necessary to provide written notice that a co-defendant would be called as a witness. Counsel further stated that at Ms. Baudin's plea hearing, he advised the trial court and the prosecutor that Ms. Baudin would testify at trial. After excusing the jury, the trial court read the discovery rule governing witnesses, noting particularly the portion which states, "the defendant shall furnish to the prosecutor a written list of the names and addresses of all witnesses." The trial court made no ruling as to possible prejudice to the state, but excluded Ms. Baudin's testimony, seemingly because her name was not included on the written list of defense witnesses.
Ms. Baudin's proffered testimony indicates that when appellant became aware of the patrol car behind him, he continued on to the building in which she works, because there was no safe place to pull over when the initial contact was made. Ms. Baudin then described observing the officers as they searched appellant, and rushing from the building to ask what was happening. Sergeant Griffin told her not to get involved. Ms. Baudin said that as she tried to retrieve her car registration and appellant's wallet from the trunk, Sergeant Griffin grabbed her arms and started to pull her towards him. Appellant interposed a verbal objection. As Officer James yanked on appellant's handcuffs and threw him to the ground, Sergeant Griffin released Ms. Baudin. She testified that she then went into the office and called campus security for help, advising that the officers were out of control.
After the proffer of Ms. Baudin's testimony, appellant testified that from the point he passed Sergeant Griffin until he got to the intersection, the traffic was light to moderate with possibly one or two runners in the area. Appellant said he traveled in the left lane, as he always does to avoid runners. When he observed Sergeant Griffin's blue light, he did not pull over immediately because there was no safe place to stop. According to appellant, he made a hand gesture to the officer to follow him. After he stopped his vehicle, Officer James asked for appellant's license and vehicle registration, and directed appellant to step to the rear of the car. Officer James frisked and then handcuffed appellant. Appellant stated that as Officer James guided appellant into the rear of the patrol car, appellant saw Sergeant Griffin grab Ms. Baudin and physically manhandle her. When appellant protested, Officer James snatched the handcuffs in a backward direction and appellant went to the ground.
The jury returned a verdict of not guilty as to the count two charge of battery of Sergeant Griffin, but found appellant guilty as *149 charged of battery upon Officer James (count one) and reckless driving (count three), and guilty of the lesser offense of resisting arrest without violence (count four).
The first issue for our review concerns the exclusion of the testimony of defense witness Wendy Baudin, because her name was not included on the written list of witnesses furnished to the prosecutor. Resolution of this issue involves the construction to be accorded discovery rule 3.220(d)(1), of the Florida Rules of Criminal Procedure. Rule 3.220(d)(1) provides in part:
(1) Within 7 days after receipt by the defendant of the list of names and addresses furnished by the prosecutor pursuant to subdivision (b)(1)(A) of this rule, the defendant shall furnish to the prosecutor a written list of the names and addresses of all witnesses whom the defendant expects to call as witnesses at the trial or hearing... .
While exclusion of evidence is a permissible sanction for violation of a discovery rule, see Fla.R.Crim.P. 3.220(n)(1), it should be imposed only if no other remedy suffices. A trial court's ruling on whether exclusion is an appropriate sanction for a discovery violation is discretionary, and should be disturbed on appeal only upon a clear showing of abuse. A determination whether to impose exclusion depends upon the totality of the circumstances. State v. Tascarella, 580 So.2d 154, 157 (Fla. 1991); Hatcher v. State, 568 So.2d 472, 477 (Fla. 1st DCA 1990), review denied, 577 So.2d 1328 (Fla. 1991); Lee v. State, 534 So.2d 1226 (Fla. 1st DCA 1988).
The inquiry into the circumstances of a discovery violation should address whether the violation was inadvertent or willful, trivial or substantial, and whether it caused prejudice or harm to the opposing party. Hatcher, 568 So.2d at 477; Lee, 534 So.2d at 1227. The court first should consider whether the violation prevented the aggrieved party from properly preparing for trial, and, if so, the court then should decide the appropriate sanction for the violation. Duarte v. State, 598 So.2d 270, 271-272 (Fla. 3d DCA 1992) (Reversible error to exclude a defense witness without inquiry as to whether the state was prejudiced by defendant's failure to list the witness, and without considering whether a lesser remedy than exclusion would suffice).
Courts have held that exclusion is too severe a remedy where the only prejudice that can be shown due to the non-disclosure of a witness is an inability to obtain evidence for impeachment purposes. Baker v. State, 522 So.2d 491, 492 (Fla. 1st DCA 1988); Fratcher v. State, 621 So.2d 525 (Fla. 4th DCA 1993). In Fratcher, a defense witness was offered to rebut the testimony of one of the officers testifying for the state. Although the witness was first disclosed at trial, the state failed to demonstrate any possible prejudice other than a hampered ability to impeach. The court held that exclusion of the witness was "far too severe a remedy for these circumstances, where the failure to list the witness during pretrial disclosure was inadvertent; the prejudice to the state could have been eliminated through a continuance; and the omitted evidence was directly relevant to the theory of the defense."
In this case, as in Baker and Fratcher, a hampered ability to impeach was the only possible prejudice to the state caused by appellant's inadvertent violation of the discovery rule. It is undisputed that as a co-defendant, Ms. Baudin was known to the state. Further, the record reflects that the prosecutor was provided actual notice that Ms. Baudin would be called as a defense witness, when defense counsel stated as much at Ms. Baudin's plea proceeding. The trial court made no finding that the state would suffer prejudice if Ms. Baudin were permitted to testify. Although Ms. Baudin's testimony was somewhat cumulative, her testimony was relevant to the defense theory. In the circumstances, exclusion was too severe a remedy to impose for failure to provide written notice to the state that co-defendant Baudin would be called as a witness for the defense. Because appellant was entitled to present testimony relevant to his defense, we must reverse with respect to issue one and remand for a new trial. See Thornes v. State, 485 So.2d 1357 (Fla. 1st DCA), review denied, 492 So.2d 1335 (Fla. 1986).
*150 Issues two, three, and four concern the trial court's denial of judgment of acquittal as to the counts charging battery upon Officer James, reckless driving, and resisting arrest. A motion for judgment of acquittal is designed to test the sufficiency of the evidence against a defendant. Joiner v. State, 618 So.2d 174, 176 (Fla. 1993); Anderson v. State, 504 So.2d 1270 (Fla. 1st DCA 1986). The party moving for judgment of acquittal admits the facts adduced in evidence and every conclusion favorable to the state which is fairly and reasonably inferable therefrom. Spinkellink v. State, 313 So.2d 666, 670 (Fla. 1975), cert. denied, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976); Gay v. State, 607 So.2d 454, 457 (Fla. 1st DCA 1992), review denied, 620 So.2d 760 (Fla. 1993). See also Gray v. State, 611 So.2d 100, 101 (Fla. 1st DCA 1992). Where the state has produced competent evidence to support every element of the crime, a judgment of acquittal is not proper. Gay, 607 So.2d at 457.
The elements of the offense of battery on a law enforcement officer are: "1) knowingly 2) actually 3) intentionally 4) touching or striking 5) against the will 6) of a law enforcement officer 7) engaged in the lawful performance of his duties." Mordica v. State, 618 So.2d 301, 304 (Fla. 1st DCA 1993), quoting State v. Henriquez, 485 So.2d 414, 415 (Fla. 1986). The crime is a specific intent crime, and requires "a subjective intent to accomplish a statutorily prohibited result." Mordica, 618 So.2d at 304; Linehan v. State, 442 So.2d 244, 247 (Fla. 2d DCA 1983). "[P]roof of intent usually consists of the surrounding circumstances of the case." King v. State, 545 So.2d 375, 378 (Fla. 4th DCA), review denied 551 So.2d 462 (Fla. 1989). The doctrine of transferred intent operates to transfer the defendant's intent with respect to the intended victim to the unintended victim. Mordica, 618 So.2d at 305. To obtain a conviction on a charge of battery on a law enforcement officer, the state is required to prove the specific intent of knowingly battering a law enforcement officer. Id., at 305.
The evidence in this case was sufficient to permit the question of appellant's intent to batter Officer James to go to the jury. The record reflects that both Officer James and the back door of the patrol car impeded appellant's access to Sergeant Griffin. Appellant pushed away from the patrol car with his legs, and in his effort to go around the door of the patrol car, he bumped against Officer James with the side of his body. Although Officer James testified that he did not think appellant was trying to get at him, we conclude the question as to whether appellant had a specific intent to batter Officer James was a matter for the jury's determination. The fact that Officer James was not appellant's intended target does not alter the fact of appellant's physical contact with the officer's person. Therefore, we find no error with respect to the trial court's denial of appellant's motion for judgment of acquittal as to the count one charge of battery of Officer James.
However, we reach a different result with respect to the denial of judgment of acquittal as to the count three charge of reckless driving. Under the provisions of section 316.192(1), Florida Statutes, "[a]ny person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving." "Willful" means "intentionally, knowingly and purposefully;" "wanton" means with a "conscious and intentional indifference to consequences and with knowledge that damage is likely to be done to persons or property." W.E.B. v. State, 553 So.2d 323, 326 (Fla. 1st DCA 1989). See also Fla.Std.Jury Instr. (Misd.) (reckless driving). It appears that excessive speed alone is insufficient to constitute evidence of reckless driving. See Bolick v. Sperry, 88 So.2d 495, 497 (Fla. 1956); Preston v. State, 56 So.2d 543, 544 (Fla. 1952); State v. Knight, 622 So.2d 188 (Fla. 1st DCA 1993).
In this case, Sergeant Griffin testified that based upon his experience, he estimated appellant's speed at fifty to fifty-five miles per hour in a posted thirty-five mile per hour zone. His radar was not in operation, and he did not check appellant's speed with his speedometer, because his patrol car was parked at the point when he observed appellant pass at an excessive speed. Sergeant Griffin also stated that appellant had his *151 vehicle under control. Officer James clocked appellant's speed with his speedometer at thirty-five to forty miles per hour. Other facts pertinent to the reckless driving determination include the time of day, which in this case was shortly before 8:00 a.m., and the traffic, which the testimony reflects was light to moderate, with possibly one or two runners and bicyclists.
We conclude this evidence was not sufficient to establish the statutory elements of reckless driving. Although the evidence would support a determination that appellant intentionally and knowingly drove his vehicle in excess of the posted speed limit, it would not support a finding of wanton disregard for the safety of persons or property. Sergeant Griffin admitted that appellant had control of his vehicle, and that his speed decreased as he approached the intersection so that it was within the normal flow of traffic. Since the state presented no evidence to establish the element of wanton disregard for safety of persons or property, the trial court should have granted appellant's motion for judgment of acquittal as to count three.
Count four of the information filed in this case charged that appellant 
did knowingly and willfully resist, obstruct, or oppose Officers M.A. James and/or Sgt. A. Griffin, law enforcement officers employed by University of West Florida Police in the lawful execution of a legal duty, to-wit: arresting the defendant, by offering or doing violence to the person of said Officers ... by fighting and struggling with said officers, in violation of Section 843.01, Florida Statutes.
Like battery on a law enforcement officer, resisting arrest with violence is a specific intent crime. Gonzales v. State, 488 So.2d 610 (Fla. 4th DCA 1986).
A determination that an officer acted improperly in the performance of his legal duty at the time of a defendant's forcible resistance to the officer is not a defense to a charge of resisting arrest with violence. Bradford v. State, 567 So.2d 911, 914 (Fla. 1st DCA 1990), review denied, 577 So.2d 1325 (Fla. 1991); Delaney v. State, 489 So.2d 891 (Fla. 1st DCA 1986). For example, engaging in a scuffle with an officer during an improper detention constitutes battery upon a law enforcement officer and can itself give rise to a valid arrest and conviction for the offense of resisting arrest with violence. Read v. State, 606 So.2d 1246 (Fla. 5th DCA 1992); Savage v. State, 494 So.2d 274 (Fla. 2d DCA 1986), review denied, 506 So.2d 1043 (Fla. 1987).
The record in this case established that appellant scuffled with the officers, and indeed appellant has not asserted otherwise. Rather, it is appellant's position that since the scuffle occurred after he had been arrested and handcuffed, the charge of resisting arrest is invalid under this court's decisions in Grant v. State, 366 So.2d 843 (Fla. 1st DCA 1979), and English v. State, 293 So.2d 105 (Fla. 1st DCA 1974). In English, the court determined that because the underlying arrest was invalid, the defendant could not have been guilty of resisting arrest. 293 So.2d at 107. In Grant, the stipulated record revealed the defendant's violent activities occurred well after he had been arrested for a no-longer existing crime. While the defendant conceivably could be found guilty of other offenses arising from his violent conduct, the court held the record would not support a finding that he resisted arrest with violence.
Unlike English and Grant, there is no suggestion in this case that the underlying arrest was improper or pertained to a nonexistent offense. Since the underlying arrest was valid, appellant's reliance on English is misplaced. Appellant's struggle with the officers was, in effect, an attempt to interfere with an officer (Sergeant Griffin) in the performance of his duty. The record indicates the state presented competent evidence of each element of the offense charged. Thus, denial of judgment of acquittal as to the charge of resisting arrest was proper.
The last issue concerns the state's exercise of peremptory challenges to excuse the only African American members of the venire. It is unnecessary to demonstrate a pattern of striking African American venire members before a trial court's duty to inquire into the state's reasons for striking these members of the panel is triggered. *152 Bowden v. State, 588 So.2d 225, 228 (Fla. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1596, 118 L.Ed.2d 311 (1992); Reynolds v. State, 576 So.2d 1300 (Fla. 1991). In challenging a prosecutor's exercise of peremptory challenges to excuse minority venire members, the defense must make a prima facie showing that the prospective jurors were challenged because of their race. Reed v. State, 560 So.2d 203, 205 (Fla.), cert. denied, 498 U.S. 882, 111 S.Ct. 230, 112 L.Ed.2d 184 (1990). If the trial judge makes such finding, the burden shifts to the state to show valid non-racial reasons for excusing the challenged jurors. Id. A defendant may raise an objection to the peremptory challenges directed to members of a cognizable group, even though he or she is not a member of the same race as the challenged jurors. Id.
A prospective juror's statement during voir dire that he or she has a relative who has been charged with a crime can provide a race neutral reason for excusing that juror. Bowden, 588 So.2d at 229. If the defense counsel fails to object to the reasons given by the prosecutor for excusing a particular juror, the opportunity to exercise a Neil[1] challenge is waived. Id. Accord Joiner v. State, 618 So.2d 174, 176 (Fla. 1993).
Defense counsel in this case met the initial burden of making a prima facie showing that challenges to the African American venire members were racially motivated. The trial judge properly inquired into the reasons for the state's exercise of its peremptory challenges. Since the reasons provided were race neutral, the trial court properly accepted the state's reasons for exercise of its peremptories. Defense counsel argued that both jurors said they could be fair, but raised no further objections to the reasons provided by the prosecutor. By accepting the jury without reservation of the earlier objections, the defense waived the Neil objection. Joiner; Bowden.
Accordingly, we reverse the trial court's exclusion of defense witness Wendy Baudin, and the denial of judgment of acquittal as to the charge of reckless driving, and remand for a new trial. In all other respects, the trial court's rulings are affirmed.
WOLF, J., concurs.
JOANOS and ERVIN, JJ., concur and dissent in part in written opinions.
JOANOS, Judge, concurring and dissenting in part.
I concur in the per curiam opinion except that I would affirm, rather than reverse, the denial of judgment of acquittal as to the count three charge of reckless driving.
There was evidence to support a determination that (1) appellant was driving at an excessive rate of speed when he entered an area of pedestrian traffic; (2) when a patrol vehicle gave chase and pulled up beside appellant's vehicle, appellant made an obscene gesture and drove on; (3) the officer was required to sound his siren before appellant could be stopped. In my view, this evidence was sufficient for the finder of fact to lawfully conclude that appellant was guilty of reckless driving.
ERVIN, Judge, concurring and dissenting.
I concur in all aspects of the plurality's opinion except that part affirming issue number 4, relating to the contention that the lower court erred in failing to grant judgment of acquittal pertaining to count four of the information, charging appellant with unlawfully resisting arrest. In so concluding, I am unable to distinguish the facts in the case at bar from those in Grant v. State, 366 So.2d 843 (Fla. 1st DCA 1979), in which the record revealed that the defendant's violent acts occurred long after he had been arrested and peacefully placed in the back seat of a patrol car, leading this court to conclude that, on such evidence, defendant could not be adjudged guilty of resisting arrest with violence.
In the case at bar, Officer James testified that after appellant's vehicle had been stopped, appellant was asked to produce his *153 driver's license and then told to step from the vehicle and place his keys and wallet on the trunk of the car. Appellant was informed that he was under arrest for fleeing, was patted down with his hands handcuffed behind him and, finally, was walked to the officers' patrol car and placed in the back seat. Only after the arrest had been completed and Ms. Baudin appeared at the scene did appellant react in a violent manner.
I fully agree with the plurality that appellant's actions support a conviction for battery upon a law enforcement officer, but I cannot agree, under the circumstances, that they support a conviction for resisting arrest.
NOTES
[1] Neil v. State, 457 So.2d 481 (Fla. 1984). See also State v. Castillo, 486 So.2d 565 (Fla. 1986); State v. Slappy, 522 So.2d 18 (Fla.), cert. denied, 487 U.S. 1219, 108 S.Ct. 2873, 101 L.Ed.2d 909 (1988).