BENTON, C.J.
 

 Hector Luis Sanchez-Andujar appeals his convictions for attempted first-degree murder of Orlando Cartagena-Torres and attempted second-degree murder of Abiezer Torres. The trial court excluded a key defense witness, albeit after conducting a
 
 Richardson
 
 hearing, unjustifiably rejecting less restrictive measures to cure any prejudice late disclosure of the witness may have occasioned. We reverse and remand for a new trial.
 

 When a “discovery violation is committed by the defense, special importance attaches to the trial court’s inquiry into alternative sanctions because exclusion of exculpatory evidence implicates the defendant’s constitutional right to defend himself or herself.”
 
 McDuffie v. State,
 
 970 So.2d 312, 322 (Fla.2007).
 
 See Comer v. State,
 
 730 So.2d 769, 775 (Fla. 1st DCA 1999) (“ ‘In a criminal ease, the exclusion of a defense witness for a discovery violation implicates a defendant’s sixth amendment right to present witnesses as well as the fundamental right to due process.’
 
 M.N. v. State,
 
 724 So.2d 122[, 124 (Fla. 4th DCA 1998) ];
 
 Taylor v. Illinois,
 
 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).”).
 

 On November 30, 2009, jury selection took place for a trial scheduled to begin on December 1, 2009.
 
 [1]
 
 Before jury selection,
 
 *482
 
 defense counsel filed a motion for continuance on grounds that one of the victims, Mr. Cartagena-Torres, had never been deposed, because he was still in federal custody, and that the state had listed an additional witness (Special Agent Dan McCaffrey whom defense counsel had not had the opportunity to depose) in a supplemental discovery exhibit filed only a week before, on November 23, 2009. The trial court denied the motion to continue the trial.
 
 [2]
 

 Defense counsel also presented ore ten-us an additional ground for the motion to continue the trial: Mr. Sanchez-Andujar had informed him earlier on November 30, 2009, that his son, Christian Sanchez, who had been living in Puerto Rico, was returning for the trial and could testify in support of his alibi. The trial judge directed defense counsel and the prosecutor to talk to Christian Sanchez, saying she would decide after that whether Christian would be allowed to testify.
 

 On the following day, December 1, 2009, before the jury was sworn, defense counsel advised the trial court that Christian Sanchez had arrived from Puerto Rico the evening before, and that he should be at the courthouse, but that counsel had not yet spoken to him. Defense counsel also reported that he had “noticed the alibi to the State.” After this colloquy, the trial court instructed defense counsel to make no mention of Christian Sanchez during his opening statement to the jury,, and the trial began.
 

 At trial, the state put on evidence that Mr. Cartagena-Torres and Ms. Torres arrived (with friends) between 10:30 p.m. and 11:00 p.m. on July 24, 2008, at a night club where.Mr. Sanchez-Andujar was already present. Carlos Santiago, a state’s witness, was in the club that night, and saw Mr. Sanchez-Andujar and Mr. Cartagena-Torres arguing. Later, according to Mr. Santiago, when he saw Mr. Sanchez-Andu-jar in the bathroom talking on his cell phone, he suggested that Mr. Sanchez-Andujar leave the club, and Mr. Sanchez-Andujar responded that he was leaving, and was asking someone to pick him up because he did not have a car. Mr. Santiago testified he did not see Mr. Sanchez-Andujar again that night.
 

 Mr. Cartagena-Torres and Ms. Torres remained until the club closed:at 2:00 a.m. Later, outside the club, a car with lights off sped towards them, getting within arm’s reach, before swerving and coming almost to a full stop. The driver’s side was closest to Mr. Cartagena-Torres and, he testified, the car windows were down. Ms. Torres testified that she heard a shot, looked and saw Mr. Sanchez-Andujar inside the car, turned and tried to run, and was shot in the back. Mr. Cartagena-Torres testified that he saw Mr. Sanchez-Andujar in the driver’s seat of the car with a gun, and that he tried to grab the gun, after Ms. Torres was shot, but that additional shots were fired and that one of the bullets struck him.
 

 After the prosecution rested, defense counsel proffered the testimony of Christian Sanchez. Christian testified on prof
 
 *483
 
 fer that he received a phone call from his father on the night of the shooting. Mr. Sanchez-Andujar told him he had had a run-in with somebody, left the site of the confrontation to avoid further problems, took a taxi but ran out of money, and asked Christian to pick him up and take him home. Christian testified that he picked Mr. Sanchez-Andujar up around 1:00 a.m. on July 25, 2008, and drove him home, and that Mr. Sanchez-Andujar did not leave again that night.
 

 The trial court then asked if the prosecutor wanted to inquire of Christian. The prosecutor refused, arguing that Christian was an alibi witness who should have been disclosed to the prosecutor ten days before trial. The prosecutor maintained that Christian should not be allowed to testify because the state had not had an opportunity to obtain telephone records, or to depose the witness before trial. The trial court then ruled Christian would not be permitted to testify because the case was a year and a half old,
 
 [3]
 
 because the witness was related to Mr. Sanchez-Andujar, because the witness had been in Puerto Rico, unavailable to any party until the last minute, and because he was an alibi witness disclosed to the prosecution only 48 hours earlier. With Christian’s exclusion, Officer Valentine of the Jacksonville Sheriffs Office and Mr. Sanchez-Andujar himself became the only witnesses to testify for the defense.
 
 [4]
 

 At the outset, we point out that the trial court had no authority to exclude witnesses under the alibi provisions of Florida Rule of Criminal Procedure 3.200
 
 [5]
 
 because the state did not trigger any defense obligation by filing a written demand for notice of intention to claim an alibi.
 
 [6]
 

 See Martin v. State,
 
 41 So.3d 1100, 1102 (Fla. 4th DCA 2010) (“[Rjule 3.200 is for
 
 *484
 
 the benefit of the State, and thus, the State cannot take advantage of the requirements of rule 3.200 to the defendant’s detriment when it has failed to comply with the rule’s initial mandate by failing to file a written demand for a notice of alibi. Therefore, the trial court abused its discretion in excluding Martin’s alibi witnesses because it was not authorized to exclude the witnesses under rule 3.200.”).
 

 Nor is this a case where defense counsel failed to provide the trial court with enough information to necessitate a comprehensive
 
 Richardson
 
 hearing.
 
 [7]
 

 Contrast Johnson v. State,
 
 25 So.3d 662, 665-66 (Fla. 1st DCA),
 
 review denied,
 
 43 So.3d 44 (Fla.2010) (concluding defense counsel did not provide the trial court with the information necessary to conduct a comprehensive
 
 Richardson
 
 hearing when defense counsel first revealed its intent to call a witness not included on the defense witness list after the close of the state’s evidence and denial of a motion for judgment of acquittal, neither proffered the testimony of the proposed witness nor explained in any meaningful detail the content of that expected evidence, and only offered a cursory preview of the proposed testimony just before jury charge which was “largely devoid of substantive content” and “provided no basis for the court to assess what effect, if any, the defense’s discovery violation had upon the State’s ability to properly prepare for trial”).
 

 The opinion in
 
 Richardson v. State,
 
 246 So.2d 771, 775 (Fla.1971) sets out a three-part test that a trial court must apply before sanctioning any party for a discovery violation. The “trial court’s discretion can be properly exercised only after an adequate inquiry is made into three areas: (1) whether the discovery violation was willful or inadvertent; (2) whether it was trivial or substantial; and (3) whether it had a prejudicial effect on the opposing party’s trial preparation.”
 
 McDuffie,
 
 970 So.2d at 321 (citing
 
 Richardson,
 
 246 So.2d at 775). Under
 
 Richardson
 
 the appeals court reviews the record to determine if “this full inquiry was made and if the trial court’s actions pursuant to the inquiry were proper.”
 
 Id.
 

 In the present case, defense counsel told the trial judge that he notified the prosecutor as soon as he learned that Christian Sanchez was expected to arrive in the country in time to testify at his father’s trial. The record indicates that defense counsel, who took over the case several months before trial, was aware of Mr. Sanchez-Andujar’s son before learning of his imminent arrival, but did not list him as a defense witness earlier because the witness was then in Puerto Rico, and the defense investigator had not succeeded in contacting him. The trial court made no finding that this belated disclosure was willful.
 
 [8]
 

 
 *485
 
 After the proffer of Christian Sanchez’s direct testimony, the prosecutor declined an opportunity to cross-examine, claiming that the state had not had an opportunity to obtain phone records
 
 [9]
 
 or to depose the witness before trial.
 
 [10]
 
 The trial court made limited inquiry into whether the violation prejudicially affected the state’s ability to prepare for trial and did not clearly make a finding of prejudice to the state.
 
 [11]
 

 Instead, the trial judge stated that both defense counsel and the state “just got this information,” noted that Christian and Mr. Sanchez-Andujar were related, observed that Christian had been in Puerto Rico unavailable to either party, and ruled that there were “no indicia of reliability.” The trial court did not explore the possibility that Mr. Santiago’s testimony about Mr. Sanchez-Andujar’s telephone calling should have been enough to alert the state to the desirability of obtaining telephone records well before trial. “[Wjithout supporting factual findings in accordance with
 
 Richardson
 
 requirements, exclusion of witness previously undisclosed on defense’s witness list was too severe a sanction.”
 
 Comer,
 
 730 So.2d at 775 (citing
 
 L.W. v. State,
 
 618 So.2d 349 (Fla. 2d DCA 1993)).
 
 See also Dawson v. State,
 
 20 So.3d 1016, 1020 n. 3 (Fla. 4th DCA 2009) (noting “that a trial court
 
 must
 
 address all three prongs of the
 
 Richardson
 
 inquiry; otherwise, the court’s analysis is not adequate”).
 

 More fundamentally, “[r]elevant evidence should not be excluded from the jury unless no other remedy suffices, and it is incumbent upon the trial court to conduct an adequate inquiry to determine whether other reasonable alternatives can be employed to overcome or mitigate any possible prejudice.”
 
 Wilkerson v. State,
 
 461 So.2d 1376, 1379 (Fla. 1st DCA 1985) (citing
 
 Austin v. State,
 
 461 So.2d 1380 (Fla. 1st DCA 1984);
 
 Fedd v. State,
 
 461 So.2d 1384 (Fla. 1st DCA 1984);
 
 Johnson v. State,
 
 461 So.2d 1385 (Fla. 1st DCA 1984);
 
 Jones v. State,
 
 360 So.2d 1293, 1297 (Fla. 3d DCA 1978)). As we have said before:
 

 In a system in which the search for truth is the principal goal, the severe
 
 *486
 
 sanction of witness exclusion for failure to timely comply with the rules of procedure should be a last resort and reserved for extreme or aggravated circumstances, particularly when the excluded testimony relates to critical issues or facts and the testimony is not cumulative.
 

 Austin,
 
 461 So.2d at 1381.
 
 See, e.g., Roopnarine v. State,
 
 18 So.3d 1192, 1194 (Fla. 4th DCA 2009) (holding the trial court erred in excluding testimony of the defendant’s brother, although the brother was not listed in discovery and his name was only provided to the state as a witness on the day of trial, where defense counsel was surprised by the brother’s decision to be a witness, and the brother could testify to exculpatory facts, ruling that the trial court “should have considered another remedy” because the state’s alleged procedural prejudice could have been cured by a continuance or, after the jury was sworn, a mistrial).
 
 See also State v. Baldwin,
 
 978 So.2d 807, 808 (Fla. 1st DCA 2008);
 
 Comer,
 
 730 So.2d at 775;
 
 Donaldson v. State,
 
 656 So.2d 580, 580-81 (Fla. 1st DCA 1995).
 
 Cf. Taylor v. Illinois,
 
 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988) (holding that if the failure to disclose a defense witness was “willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence, it would be entirely consistent with the purposes of the Compulsory Process Clause simply to exclude the witness’ testimony”).
 

 No effort was made to determine whether reasonable means could have been employed to overcome any prejudice to the state without resorting to the total exclusion of the witness. All indications are that a brief continuance would have cured any possible prejudice. As the court stated in
 
 Mattear v. State,
 
 657 So.2d 46, 47 (Fla. 4th DCA 1995) (quoting
 
 Woody v. State,
 
 423 So.2d 971, 971 (Fla. 4th DCA 1982)):
 

 [A] trial court’s decision to exclude testimony for a discovery violation should balance “the propositions that the reciprocal rules of discovery should be followed so long as the defendant is not denied his fundamental right to defend himself.” Since the testimony sought to be introduced by the witnesses in the instant case was exculpatory in nature, exclusion of the testimony would deny appellant his fundamental right to defend himself in violation of the Sixth Amendment....
 

 We are not suggesting by this opinion that the trial court, after determining under
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971), that the state would suffer substantial prejudice, should have allowed the witnesses to testify in the trial presently underway. When exculpatory evidence is sought to be introduced in violation of the discovery rules, and remedies which would allow the trial to proceed are insufficient, the proper course of action is to declare a mistrial. A mistrial is an appropriate discovery sanction under rule 3.220(n)(l), Florida Rules of Criminal Procedure.
 

 Excluding Christian’s testimony was not justified on grounds no other adequate remedy was available.
 
 See McDuffie,
 
 970 So.2d at 322;
 
 Dawson,
 
 20 So.3d at 1021;
 
 Casseus v. State,
 
 902 So.2d 294, 295-96 (Fla. 4th DCA 2005);
 
 Fabregas v. State,
 
 829 So.2d 238, 241 (Fla. 3d DCA 2002). A mistrial would not have been necessary. The trial had not begun when it became clear that Christian would be available as a trial witness.
 

 With the exclusion of Christian Sanchez’s testimony, Mr. Sanchez-Andu-jar’s ability to present his defense was seriously compromised. While the “erroneous exclusion of exculpatory defense evi
 
 *487
 
 dence following a
 
 Richardson
 
 hearing is subject to harmless error analysis,”
 
 Dawson,
 
 20 So.3d at 1021;
 
 see also C.D.B. v. State,
 
 662 So.2d 738, 741 (Fla. 1st DCA 1995), such “[ejrror is harmless only where it can be said, beyond a reasonable doubt, that the error could not have affected the verdict.”
 
 Comer,
 
 730 So.2d at 775 (citing
 
 Czubak v. State,
 
 570 So.2d 925, 928 (Fla.1990)).
 

 Excluding the testimony proffered in the present case was not harmless error because it cannot be said on this record beyond a reasonable doubt that the testimony of Christian Sanchez could not have produced a reasonable doubt in the minds of the jurors sufficient to tip the scales in favor of acquittal. Mr. Sanchez-Andujar, who testified at trial that he did not shoot the victims, denied that he was present when the shooting occurred. Christian’s proffered testimony, which would have been highly relevant, indeed central, to this defense, would have corroborated Mr. Sanchez-Andujar’s version of events.
 

 Reversed and remanded for a new trial.
 

 WETHERELL and ROWE, JJ., concur.
 

 [1]
 

 . The shootings occurred on July 25, 2008. Mr. Sanchez-Andujar was charged on September 10, 2008, and trial was initially set for January 26, 2009. On January 21, 2009, the trial court granted the state’s motion for continuance because the state was unable to locate the victims. On February 5, 2009, the trial court granted a defense motion for con
 
 *482
 
 tinuance in which defense counsel asserted the need for additional time to complete its investigation by interviewing Spanish speaking witnesses that required the use of an interpreter. On September 10, 2009, the trial court granted a second defense motion for continuance in which defense counsel stated that Mr. Cartagena-Torres was in federal custody in another state and had not been deposed.
 

 [2]
 

 . The trial court stated that Mr. Cartagena-Torres would be present at trial the next day, and that defense counsel would be given time to speak to Mr. Cartagena-Torres before he took the stand.
 

 [3]
 

 . Although the trial court's decision was based in part on the fact that the case had been pending for over a year, there is no indication in the record that any part of the delay was attributable to any improper action on the part of the defense. See
 
 generally Garner v. Langford,
 
 55 So.3d 711, 712 (Fla. 1st DCA 2011) ("Considering the need for balance, we respectfully do not see that the trial court could cite any sufficiently just reason to deny the motion, even given the age of the case.”).
 

 [4]
 

 . Mr. Sanchez-Andujar testified on his own behalf that he had been taken to the night club by a friend around 10:30. He testified that, after the disagreement with Mr. Cartage-na-Torres, Mr. Santiago came into the restroom and told him to leave the club, that he in fact left around 1:00, and that he never saw any of the people in the club after that.
 

 [5]
 

 . Florida Rule of Criminal Procedure 3.200, Notice of Alibi, provides:
 

 On the written demand of the prosecuting attorney, ... a defendant in a criminal case who intends to offer evidence of an alibi in defense shall, not less than 10 days before trial or such other time as the court may direct, file and serve on the prosecuting attorney a notice in writing of an intention to claim an alibi, which notice shall contain specific information as to the place at which the defendant claims to have been at the time of the alleged offense and, as particularly as is known to the defendant or the defendant’s attorney, the names and addresses of the witnesses by whom the defendant proposes to establish the alibi.... Both the defendant and the prosecuting attorney shall be under a continuing duty to promptly disclose the names and addresses of additional witnesses who come to the attention of either party subsequent to filing their respective witness lists as provided in this rule. If a defendant fails to file and serve a copy of the notice as herein required, the court may exclude evidence offered by the defendant for the purpose of providing an alibi, except the defendant's own testimony.... For good cause shown the court may waive the requirements of this rule.
 

 [6]
 

 .The witness was excluded on this ground at the state's behest, over defense objection. We therefore reject the state’s argument that this contention is not preserved for review.
 

 [7]
 

 . “When a party fails to comply with [rule 3.220(d)(1)(A) ], the trial court is to determine whether such failure has prejudiced the opponent, but 'only after the court has made adequate inquiry into all of the surrounding circumstances.’
 
 Richardson v. State,
 
 246 So.2d 771 (Fla.1971).”
 
 Johnson v. State,
 
 25 So.3d 662, 665 (Fla. 1st DCA),
 
 review denied,
 
 43 So.3d 44 (Fla.2010). The defense was under an obligation to list all defense witnesses because the defense elected to participate in discovery under the rule.
 
 See
 
 Fla. R. Crim. P. 3.220(d)(1)(A). Christian Sanchez was not listed as a witness by the defense or disclosed to the prosecution until November 30, 2009.
 

 [8]
 

 . In denying the motion for continuance on November 30, however, the trial court did say that any alibi witness would have immediately been known to Mr. Sanchez-Andujar, and that, if Mr. Sanchez-Andujar chose to wait until the eve of trial to disclose the witness to defense counsel, that was his problem.
 
 But see Roopnarine v. State,
 
 18 So.3d 1192, 1194 (Fla. 4th DCA 2009) (holding that, although the trial “court noted that the defendant had
 
 *485
 
 known about the brother but failed to list him as a witness, thus preventing the state from deposing the brother to discover his story, inconsistencies, and investigate the case further ... [and t]he state was procedurally prejudiced,” the trial court erred in excluding the brother as a witness, noting defense objection that " ‘there’s no prejudice that can’t be cured’ ”).
 

 [9]
 

 .A brief continuance could have cured both of the state’s problems. The bare assertion that impeachment evidence might have been uncovered is insufficient.
 
 See Baker v. State,
 
 522 So.2d 491, 492 (Fla. 1st DCA 1988) (holding exclusion solely on the ground that the untimely disclosure of the witness left the prosecution with no time to gather information with which to impeach the credibility of the witness "is insufficient, as inability to obtain ‘impeachment’ evidence is invariably a factor with an undisclosed witness and would require exclusion in every case, regardless of the comparative detriment to the parties and the justice of the case”).
 
 See also Grace v. State,
 
 832 So.2d 224, 227 (Fla. 2d DCA 2002);
 
 Miller v. State,
 
 636 So.2d 144, 149 (Fla. 1st DCA 1994);
 
 Fratcher v. State,
 
 621 So.2d 525, 526 (Fla. 4th DCA 1993).
 

 [10]
 

 . Christian had been placed under oath for the proffer, and had already been tendered for cross-examination by the prosecution.
 

 [11]
 

 . "Prejudice in this context means procedural prejudice significantly affecting the opposing party's preparation for trial.”
 
 McDuffie v. State,
 
 970 So.2d 312, 321 (Fla.2007).
 
 See also Comer v. State,
 
 730 So.2d 769, 774 (Fla. 1st DCA 1999) (“In assessing procedural prejudice, the trial court must determine, first, whether the discovery violation precluded the aggrieved party from adequately preparing for trial, and second, what is the proper sanction to invoke for the discovery violation.”) (citing
 
 Smith v. State,
 
 372 So.2d 86, 88 (Fla.1979);
 
 Wilcox v. State,
 
 367 So.2d 1020, 1023 (Fla.1979)).